Estate of Edmund H. Lunken, Deceased, Kathryn F. Lunken, Executrix v. Commissioner.
Estate of Edmund H. Lunken, Deceased v. Commissioner
Docket No. 1665.
United States Tax Court
1945 Tax Ct. Memo LEXIS 164; 4 T.C.M. (CCH) 610; T.C.M. (RIA) 45203; June 11, 1945
*164 Murray M. Flack, Esq., 2301 Union Central Bldg., Cincinnati, O., for the petitioner. John H. Pigg, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in gift taxes for the year 1941 in the amount of $34,929.89. The sole issue is the fair market value on December 26, 1941 of 28,000 shares of the common stock of The Lunkenheimer Company in blocks of 10,000, 10,000 and 8,000 shares. Many of the material facts were stipulated and are so found. Facts hereinafter appearing which were not stipulated are found from the evidence. Findings of Fact The donor and original petitioner in this case, Edmund H. Lunken, died on July 19, 1944. At the time of his death he was residing at Compton Hills Drive, R.R. 5, Wyoming, Ohio. His gift tax return for the calendar year of 1941 was filed with the collector of internal revenue for the first district of Ohio, at Cincinnati, Ohio. Kathryn F. Lunken is the duly appointed and qualified executrix of the Estate of Edmund H. Lunken. On December 26, 1941, the decedent, Edmund H. Lunken, as donor, entered into a Trust Agreement with Homer E. Lunken as Trustee, *165 under the terms of which the donor transferred to the Trustee, as gifts to 3 beneficiaries named in the Trust Agreement, 28,000 shares of the common stock of The Lunkenheimer Company, 10,000 shares for the benefit of Homer E. Lunken, 10,000 shares for the benefit of Charlotte L. O'Rourke, and 8,000 shares for the benefit of Kathryn F. Lunken, the son, daughter and wife, respectively, of the donor. On or about March 15, 1942, the decedent filed a gift tax return for the calendar year 1941, wherein he reported the 28,000 shares of The Lunkenheimer Company stock as having a fair market value on the basic date of $504,000, or $18 per share. The Lunkenheimer Company is a corporation organized under the laws of the State of Ohio with its plant and principal offices located in Cincinnati, Ohio. It is engaged in the business of manufacturing and selling bronze and steel valves, and other engineering accessories and devices. On December 26, 1941, The Lunkenheimer Company had an authorized capital stock of 200,000 shares of no par value common stock, all of which was outstanding, and 10,000 shares of preferred stock of the par value of $100 per share of which 5,238 shares were outstanding. *166 The common stock of The Lunkenheimer Company is listed and traded in on the Cincinnati Stock Exchange. It is not listed on any other Stock Exchange. The records of the Cincinnati Stock Exchange show that for the years 1931-1941, inclusive, the following number of shares of Lunkenheimer common stock were traded, the high price and the low price for each year being as follows: Number of
Year
Shares Sold
High
Low
1931
Unknown
32
15
1932
Unknown
9
7 3/4
1933
Unknown
10 1/2
8
1934
Unknown
13
10
1935
2333
15
8
1936
2584
33
18
1937
1658
37
20
1938
439
20
17
1939
1130
24
17
1940
3299
22 1/2
16
1941
2798
25 3/4
19 1/2
The following are all the sales recorded on the Cincinnati Stock Exchange in Lunkenheimer common stock for the period July 1, 1941 to and including February 28, 1942: Number
Date
of Shares
Price
1941
July 18
10
24
July 21
17
24
July 23
6
24
July 23
25
25
July 23
6
25
July 29
10
25 3/4
August 11
4
25
August 11
30
23 3/4
August 14
10
22 3/4
August 20
30
24
August 20
10
24
August 22
30
24
September 4
11
25
September 5
20
24 3/4
September 16
25
23
September 24
16
23 1/4
October 10
20
23
October 29
11
23
November 5
50
23
November 10
5
23
November 12
40
23
November 12
10
23
November 13
100
23 1/4
November 21
25
23
1942
February 18
50
23 1/2
February 19
10
23 1/2
February 25
15
23 1/2
February 26
4
23
*167 The following are the Cincinnati Stock Exchange bid and ask prices of the Lunkenheimer common stock for the months of November and December 1941 and January 1942: Period
Bid
Ask
1941
November 1 to November 4
23
23 3/8
November 5
None
None
November 6 to November 13
23
None
November 13 to November 15
None
None
November 15 to November 21
None
23
November 21 to December 4
23
None
December 4 to December 8
22 3/4
None
December 8 to December 12
18
None
December 12
18 1/8
None
December 13
18
None
December 15 to December 18
18 1/8
None
December 18 to December 20
18 1/2
None
December 20 to December 22
18 1/2
21
December 22 to January 7
20
None
1942
January 7 to January 14
22
None
January 14
22
25
January 15 to January 17
22 1/2
25
January 17 to January 21
22
25
January 21
22 1/2
25
January 22
23
25
January 23 to January 26
23 1/4
25
January 26 to January 31
23
25
The following is a list of all of the over-the-counter sales in this stock during the month of December 1941: Number
Date
of Shares
Price
December 20, 1941
2
18 1/2
December 22, 1941
10
19
December 22, 1941
10
19 1/4
*168 The following tabulation shows the net sales, profits or losses after taxes and preferred dividend requirements, and dividends per share on the common stock for the years 1931 to 1941, inclusive: Earnings
Cash Dividend
Year
Sales
Profit or Loss
Per Share
Per Share
1931
$ 2,615,897.82
($ 668,561.63)
$1.375
1932
1,509,720.32
( 686,284.50)
.125
1933
1,826,435.84
28,423.02
.142
.125
1934
2,575,968.58
39,345.65
.196
.375
1935
2,973,143.76
182,424.43
.912
.60
1936
4,157,967.92
525,911.41
2.62
1.50
1937
5,371,508.12
744,693.57
3.72
2.25
1938
3,820,454.62
139,011.17
.695
1.125
1939
4,653,413.45
308,785.76
1.54
1.25
1940
6,585,903.09
670,477.27
3.35
1.75
1941
11,059,721.66
1,188,119.43
5.94
2.00
The book value of the shares for the years 1937 to 1941, on the dates shown, was as follows: Year
Book Value
December 31, 1937
27.13
December 31, 1938
26.72
December 31, 1939
27.24
December 31, 1940
28.89
December 31, 1941
31.03
The sharp increase in the volume of net sales and profits during the years 1940 and 1941 was primarily due to economic conditions incident to the war, *169 the national defense program and the resultant advance in prices. The Lunkenheimer Company was subject to renegotiation of its war contracts. Subsequent to the close of the year 1942, the contract prices of certain of the company's war contracts were renegotiated by the Maritime Commission to an extent equivalent to approximately 56.22 per cent of its 1942 sales. As a result, that company was required to refund approximately $472,000. There was no renegotiation of the company's war contracts for the year 1941. On December 26, 1941, immediately prior to the gift of the 28,000 shares of the common stock in controversy, the donor and others related to him by blood and marriage owned 2,034 of the 5,238 preferred shares outstanding. On the same date the donor and his relatives owned 144,088 of the 200,000 outstanding shares of the common stock of The Lunkenheimer Company. The remaining 55,912 shares were owned by 580 persons not related to the donor. On December 31, 1941, Homer E. Lunken, son of the donor, and beneficiary of 10,000 shares given in trust by the donor on December 26, 1941, purchased an additional 1,000 shares of the Lunkenheimer common stock from the donor at $20 per *170 share. The sole reason for this transaction was to assist the donor in raising funds to pay the gift tax on the gifts in trust made on December 26, 1941. The price of $20 per share was fixed after consultation by the purchaser with the donor and the family attorney for many years. Sometime in March 1942, Charlotte L. O'Rourke, the daughter of the donor, and beneficiary of 10,000 shares of the common stock of The Lunkenheimer Company under the aforementioned trust, also purchased from the donor an additional 1,000 shares of the common stock of that company at a price of $20 per share for the same reason and purpose. The market for the Lunkenheimer stock on the Cincinnati Stock Exchange on December 26, 1941, as well as before and after that date, was very narrow and thin and blocks of 10,000, 10,000 and 8,000 shares could not have been sold thereon within a reasonable time. Such blocks could be disposed of only through secondary distribution at a cost of $2 per share. The fair market value of the 28,000 shares of common stock of The Lunkenheimer Company, given in trust on December 26, 1941, was $21 per share, or a total value of $588,000. In his determination of the deficiency in *171 gift tax involved in this proceeding, the respondent determined the total fair market value of the above-described 28,000 shares of common stock of The Lunkenheimer Company, as of December 26, 1941, to be $644,000 and $23 per share. In explanation of such determination, the deficiency notice states as follows: "Based upon the available evidence of record, the fair market value of 28,000 shares of the common stock of The Lunkenheimer Company as of December 26, 1941, the date of gift, has been determined to be $23.00 per share. In making this determination, consideration has been given to book value, corporate earnings, dividend disbursements, and all relevant factors affecting fair market value, primary weight having been accorded market quotations at or near the date of gift." The gift tax return filed by the donor for the year 1941, above referred to, disclosed a gift tax liability of $106,368.78, which amount was paid on March 16, 1942. The deficiency in gift tax involved in this proceeding in the amount of $34,929.89 was assessed on or about April 1, 1943, together with interest thereon in the amount of $2,187.66, which amounts were paid on or about April 3, 1943. Opinion
*172 The sole question presented is the fair market value of gifts in trust of 28,000 shares of the common stock of The Lunkenheimer Company in blocks of 10,000, 10,000 and 8,000 shares on December 26, 1941. The donor, for gift tax purposes, returned a unit value of $18 per share. Petitioner contends that the price at which the common shares of that company were bought and sold on the open market furnishes the best evidence. It further argues, since these large blocks could not be sold within a reasonable time, the usual cost of secondary distribution should be deducted from the unit price. The respondent, in determining the deficiency, increased the unit value of the shares to $23. He contends that the public market on which the shares of that company were dealt in was so narrow and thin, that the small sales nearest the critical date furnish no sound evidence of the fair market value. The answer to these conflicting views, we think, rests in the particular facts shown by this record. Tabulations covering transactions in the shares of the common stock of The Lunkenheimer Company on the Cincinnati Stock Exchange, the bid and ask prices, and certain over-the-counter sales have been stipulated. *173 Expert testimony was adduced in support of both contentions. Of the 200,000 outstanding common shares, 144,088 were owned by individuals related by blood or marriage to the Lunken family. The remaining 55,912 shares were held by outsiders. Only the latter amount of shares could normally be considered as available for public trading. The stock was listed only on the Cincinnati Stock Exchange, in which city that company had its plant and principal office. There were no sales of the stock on the critical date of December 26, 1941. The only sales near that date were over-the-counter when two 10 share lots were sold on December 22, 1941 at 19 and 19 1/4, respectively. No testimony was offered as to the circumstances of these two sales or the individuals involved. Between the period December 22, 1941 to January 7, 1942, there was a bid of 20 but no asking price. The first bid and asking prices were on January 14, 1942, when the bid was 22 and the asking price was 25. The last sale on the Cincinnati Stock Exchange prior to the critical date was 25 shares at 23, and the next subsequent sale on that Exchange was on February 18, 1942, when 50 shares were sold at 23 1/2. From July 18, 1941 to *174 November 21, 1941, when the last sale on that Exchange was made, all sales on that Exchange were at 23 or better, except one sale of 10 shares at 22 3/4 on August 14. During that period a total of 521 shares were sold in 24 separate lots ranging from 4 to 100 share lots, at an average price of 23 3/4 per share. During the period 1935 to 1941, inclusive, a total of 14,241 shares was sold on that Exchange at a price range of 8 in 1935 to a high of 37 in 1937, or a mean average of 22 1/2 per share. We think these facts indicate that the open market trading in these shares was narrow and thin. Under the circumstances, the prices obtained in the two sales of small lots of 10 shares each over-the-counter on December 22, 1941, though evidence, are not, we think, controlling on the question of the fair market value of the common shares on the critical date. Cf. ; . Petitioner offered proof of two sales of this stock in lots of 1,000 shares which took place on December 31, 1941 and in March 1942. One of these transactions was between the donor and his son, and the other between the donor and *175 his daughter. Both children were beneficiaries of the trust to which the 28,000 shares in question were given. The purchase price in each instance was $20 per share. The purchases were solely for the purpose of assisting the donor in raising funds to discharge donor's gift tax liability. Because of the intimate family relationship we do not regard these sales as having the probative value of an arm's length transaction, although they appear to have been made in good faith. Hence other criteria must be considered in determining the fair market value of these shares. Accordingly, we have given due weight to all the evidence including such factors as the book value, earnings, dividend distributions, past history and future prospects, as well as the efficient management which it appears likely will continue. We have also given proper consideration to the expert testimony offered by the respective parties. Weighing all these factors we have concluded that the unit value of the common shares of The Lunkenheimer Company stock on the critical date was not less than $23 per share. There appears to be no dispute that blocks of 10,000, 10,000 and 8,000 shares of the common stock of that company *176 could be disposed of only through secondary distribution. Nor is there any dispute that the usual expense of such method of distribution is $2 per share. Cf. ; . Therefore, we have concluded that the value of the 28,000 shares of the common stock of The Lunkenheimer Company on December 26, 1941 was $21 per share, or a total value of $588,000. We have so found as a fact. Petitioner, having paid entire amount of the deficiency with interest based on the respondent's determination of a value of $644,000, has overpaid its gift tax in the amount of such tax as was paid on $56,000. Decision will be entered under Rule 50.